ALDACE F. WALKER *et al.*, *Receivers*, v. FRED E. GILLETT.

### No. 10556.

1. APPELLATE PROCEDURE—*fact apparently assumed at trial, and impliedly admitted by testimony offered and instructions requested by plaintiff in error, judgment not reversed for want of formal proof of such fact.* In an action by an employee against the receivers of a railway company to recover damages for injuries received in the course of his employment, where the appointment and qualification of the receivers are admitted by the answer filed by them, and other issues are presented as to the merits of the case, and the trial proceeds throughout without any question being brought to the attention of the court as to whether the receivers were in possession of the particular train causing the injury, and where the testimony offered and the instructions asked by the defendants impliedly admit that they were operating the train, this court will not reverse a judgment rendered against them, merely because of a want of formal proof that the train was operated by employees of the receivers.

2. FELLOW SERVANTS—*at common law, conductor, and brakeman subject to his orders, are not.* At common law, a conductor having full charge and control of a train of cars is not a fellow servant with a brakeman who acts under his orders. In such a case the conductor is the representative of the principal, and the latter is responsible to the brakeman for the conductor's negligence.

3. PROVINCE OF JURY—*to determine whether brakeman injured through his own, or conductor's negligence.* Where a conductor of a railway train orders a brakeman to hurry up and examine the couplings and get the train in shape, and promises the brakeman that he will keep watch, and thereafter, without warning, and while the brakeman is engaged in removing a defective and unsuitable rod used in a coupling, signals the engineer to back other cars against the stationary ones, and thereby causes the brakeman to be run over and maimed, it is within the province of the jury to determine whether the injury is attributable to negligence on the part of the conductor, or of the brakeman; and a verdict finding the conductor guilty of negligence, and assessing damages against the receivers of the company in charge of the property, will not be disturbed by this court.

Error from Johnson District Court. John T. Burris, Judge. Opinion filed March 5, 1898. *Affirmed.*

*A. A. Hurd, O. J. Wood, W. Littlefield* and *A. A. Scott*, for plaintiffs in error.

*A. Smith Devenney*, for defendant in error.

ALLEN, J. While employed as a brakeman on the Atchison, Topeka & Santa Fe Railroad, at Perry, Oklahoma, Fred E. Gillett received injuries resulting in the amputation of his left leg above the knee and seriously crippling his right foot. This action was brought by him in the District Court of Johnson County against the plaintiffs in error, as Receivers of the Railroad Company, to recover damages for these injuries.

In the petition it was alleged that the defendants were, at the time of the injury, the duly appointed and acting Receivers of the Railroad Company, and were then operating, managing and controlling the engines and cars of the company through the Territory of Oklahoma and the State of Kansas ; that the plaintiff was in the employ of the defendants as a brakeman on a freight train, under a conductor named Deitrick, who had full charge and control of the train ; that at Perry, in the Territory of Oklahoma, on November 28, 1894, when the train was standing on the main track and shortly before its time to depart, the conductor ordered the plaintiff to hurry and examine the air-brakes and couplings of the stationary cars of the train ; that in obeying this order, the plaintiff discovered that two of the cars were coupled with a long, slim, bent iron rod, which was unsafe for use ; that plaintiff in attempting to remove this rod to insert a coupling pin was in the act of knocking out the rod, and in a stooping position, when the conductor, negligently and without warning, caused one or more cars to be driven back by the engine against the sta-

tionary cars, knocking the plaintiff off his feet and under the moving cars, whereby he received the injuries before mentioned ; that the conductor knew, or by the exercise of ordinary care might have known, that the plaintiff was at the time between the cars.

The defendants answered : *First,* denying generally the averments of the petition. *Second,* alleging that the injury, if any, happened in the Territory of Oklahoma, where the common law was in full force, and that the negligence, if any, was that of a fellow servant, for which under the law of Oklahoma the defendants were not liable. *Third,* that the injuries were caused by the negligence of the plaintiff himself.

This answer was not verified. The case was tried, and resulted in a verdict in favor of the plaintiff for $6500, on which judgment was entered. The Receivers bring the case to this court.

The main contention here is that the court erred in overruling the defendants' demurrer to the testimony offered by the plaintiff. It is said that while the answer of the defendants admitted the appointment and authority of the Receivers, it did not admit that the men in charge of the train when the plaintiff was injured were employees of the Receivers ; that there was no proof of such employment, and that there was, therefore, a fatal omission of proof of a fact essential to the plaintiff's cause of action. The plaintiff himself testified that at the time of the injury he was braking for the Atchison, Topeka & Santa Fe Railroad Company. His attention does not appear to have been called to the fact that the property of the company was then in the hands of receivers, and no witness was asked any question about the Receivers.

It may well be doubted whether there is not an implied admission in the answer that the Receivers, who

1. Judgment not reversed for want ol formal proof of fact impliedly admitted.

pleaded to the merits of the case, were in possession of the property of the railroad company, and actually discharging the duties which devolved on them by virtue of the appointment, which they admitted by their unverified answer. The allegation in the second paragraph of the answer, that the negligence, if any, causing the injury, was that of a fellow servant of the plaintiff, would seem to imply that the plaintiff was a servant of the defendants. But whether the ruling of the court on the demurrer to the evidence was right or wrong, the plaintiffs in error are not now in a position to gain any advantage of the technical omission, if such there was. The defendants placed the other trainmen on the stand as witnesses. They all testified that they were working on the Atchison, Topeka & Santa Fe Railroad or for the Atchison, Topeka & Santa Fe Railroad Company. The trial seems to have been conducted throughout as though the Receivers and the Railroad Company were identical, and the question of the receivership appears to have been treated as a conceded fact. This is made clear by the seventh instruction asked by the Receivers. The court was requested to charge the jury that "the defendants, Receivers of the Railroad Company, were not bound by law to use any particular kind of coupling pin; that they had the right in coupling their cars to use the iron bolt that they did use, if they saw fit to do so."

Other parts of the instructions asked, also indicate that no question as to the relationship of the Receivers to the train which caused the injury to the plaintiff was ever brought to the attention of the trial court. In this state of the case, it would be manifestly unfair to reverse the judgment merely on the ground of a want of technical proof of the connection of the Receivers with the property which it was manifestly their duty to manage.

The question most discussed is whether the conductor and the plaintiff were fellow servants within the meaning of the common-law rule, obtaining in Oklahoma, which denies the plaintiff a right of recovery for an injury resulting from the negligence of a fellow servant. Counsel for the plaintiff in error contend that the test as to who are fellow servants is merely whether they are engaged in the same line of service for the same master; that the only difference in the employment of the conductor and the plaintiff was that the scope of that of the former was greater than that of the latter, and that the master rests under no greater duty to properly perform the duties of the conductor than those of the brakeman.

2. Conductor and brakeman not fellow servants

It must be conceded that the courts have indulged in much refinement of reasoning on the question of who are fellow servants, and that the grounds on which many decisions have been based on either side of the question are not altogether satisfactory. The precise question in this case is, whether the master is liable to a brakeman for injuries occasioned by the negligence of the conductor of the train on which he was employed where the conductor had full charge of the movements of the train and the brakeman was acting under his orders. In the case of a railway corporation there is no personal master. The stockholders and bondholders have the property interests but no direct management of the property. Their interests are looked after by a board of directors, which, in turn, employs general officers of greater or less authority, who have the direct and personal supervision of the operation of the property. Where the general power to manage and command is given to one, and the duty of the others is merely to execute and obey, he who directs stands in the place of the principal, and the principal must respond to those under him

for his misconduct. This must be so, else it is impossible to see how at common law a railroad corporation can ever be responsible to any of its employees for the misconduct of any officer occupying a superior station in the same line of service ; for all are servants, and the master is only an intangible corporate entity.

In *A. T. & S. F. Rld. Co. v. Seeley*, 54 Kan. 21, the liability of the company to a brakeman for the negligence of those charged with the duty of loading cars was sustained. Where the injured employee and the one whose negligence occasions the injury, are engaged in different branches of corporate service, it seems to be now quite generally held that the common law rule exempting the master from liability does not apply. It may be that a mere matter of difference in the grade of service of the employees is not controlling, but where one is under the direct and personal supervision and control of the other it does control. We shall not attempt anything like a review of all the authorities bearing on this much mooted question, but content ourselves with a few citations sustaining our conclusion. *C. M. & St. P. Rly. Co. v. Ross*, 112 U. S. 377 ; *Moon's Adm'rs v. Richmond & Allegheny Rld. Co.*, 78 Va. 745, 49 Am. Rep. 401 ; *C. St. P. M. & O. Rly. Co. v. Swanson*, 16 Neb. 254, 49 Am. Rep. 718 ; *Cowles v. Rld. Co.*, 84 N. C. 309. In *Railway Co. v. Ross*, supra, it was said by Mr. Justice Field, delivering the opinion of the court :

" There are decisions in the courts of other states more or less in conformity with those cited from Ohio and Kentucky, rejecting or limiting, to a greater or less exent, the master's exemption from liability of a servant for the negligent conduct of his fellows. We agree with them in holding — and the present case requires no further decision — that the conductor of the railway train, who commands its movements, directs when it shall start, at what stations it shall stop, at

what speed it shall run, and has the general manage-
ment of it, and control over the persons employed
upon it, represents the company, and therefore that,
for injuries resulting from his negligent acts, the com-
pany is responsible.''

Great care was taken in the opinion in *B. & O. Rld.
v. Baugh*, 149 U. S. 368 (which was an action by a
fireman to recover for injuries resulting from the
negligence of the engineer), to distinguish it from the
case of *Railway Co. v. Ross*. The opinion was deliv-
ered by Mr. Justice Brewer, Mr. Justice Field and
Chief Justice Fuller dissenting. If the court really
intended in the latter case to restrict the rule declared
in the former, the question being one of general law,
we are satisfied with and adhere to the law first de-
clared in *Railway Co. v. Ross* in its entirety. Who-
ever has full and unrestricted authority to direct and
command is a vice-principal, and for his negligence
the master must respond.

But little need be said on the question as to the
sufficiency of the proof to sustain the charge of negli-
gence on the part of the conductor. The plaintiff
testified that the conductor told him — ''You hurry
up and go back and examine your air-
brakes and couplings and get the train
in shape. I will get the numbers here
of these cars and keep a lookout. We want to get out
of the road of No. 23. If we hurry up we can get
over on the passing track out of her way, so as to let
her have the main line.'' There is no question that
it was the duty of the plaintiff to obey this order, and
to carefully inspect the couplings and remove any un-
safe or defective one and supply it with a proper one.
He was in the discharge of this duty when he was in-
jured. In going between the cars to remove the bent
rod, he necessarily went where he could not see what
was being done, and where he was out of sight of the

3. Province of jury
to determine
negligence.

conductor.  The conductor knew when he gave the order that in making any change of couplings he would necessarily go between the cars.  Notwithstanding this, and his assurance to the plaintiff that he would keep watch, he gave the signal to the engineer to back down the cars against the stationary ones, resulting in running over the plaintiff.  Under this state of facts, it was within the province of the jury to determine that the conductor was guilty of negligence, and that it was his fault rather than that of the plaintiff that caused the injury.  The conductor being the representative of the Receivers in the management of the train, they must respond in damages for his negligence.

We find nothing in the special findings inconsistent with the general verdict, and the questions discussed on the motion for a new trial are substantially those presented on the merits of the case.

The judgment is affirmed.