## JOHN DOGGETT v. THE RICHMOND & DANVILLE RAILROAD COMPANY.

*Negligence, Proximate and Remote---Damages, Proximate and Remote.*

1. Where the negligence of the defendant is proximate and that of the plaintiff remote, an action for damages can be sustained although the plaintiff is not entirely without fault; but if the injury sustained by he plaintiff is the product of mutual or concurring negligence, no action for damages will lie.

2. Where, in an action for damages against a rail-road company for the destruction of plaintiff's fence by fire, it appeared that the plaintiff's fence was three-fourths of a mile from the fence which was first ignited by sparks emitted from an engine of defendant, but was connected with it by a continuous line of fence joined together by intermediate land owners, and that the owner of the fence which originally caught on fire was guilty of contributory negligence; *Held,* that the negligence of plaintiff in connecting with such fence was *remote* and did not affect his right to maintain the action.

3. To render a defendant liable in such case, the injury suffered by the plaintiff must be the natural and probable consequence of defendant's negligence; such a consequence as under the surrounding circumstances of the case might or ought to have been foreseen by the wrong-doer as likely to result from his action.

4. Where a fire is negligently kindled and by reason of some intervening cause is carried or driven to objects which it would not otherwise have reached, the destruction of such objects is a remote consequence of the negligence.

5. Where in such action it appeared that the fire caught between 10 and 11 a. m. but had been extinguished in the opinion of those contending with it who had left it, and thereafter it broke out afresh and was carried to plaintiff's premises; *Held,* that the injury was *remote* and that plaintiff can not recover.

6. In such case, if there was any intervening negligence in the effort to extinguish the fire either by the intermediate land owners or their neighbors who assembled for that purpose, when their endeavors properly executed might have been successful, the plaintiff cannot recover.

7. In such case, when the danger is imminent, the law imposes the burden upon the plaintiff to show that he was not negligent.

19

---

DOGGETT *v.* R. & D. R. R. Co.

---

CIVIL ACTION, for Damages tried at December Special Term, 1876, of GUILFORD Superior Court, before *Kerr, J.*

It was alleged that by reason of sparks of fire emitted from an engine of defendant company, a lot of cross-ties on the side of the track were ignited ; that the wind blew the fire to a fence of one Troxler, which was consumed ; that in its course and before it could be controlled, it burned about 250 pannels of the plaintiff's fence ; and that the defendant had neglected to provide proper safeguards and appliances to prevent injury from sparks, as aforesaid. To recover damages for the injury resulting from this alleged negligence, the plaintiff brought this action, and the defendant denied the allegations of the complaint. The facts set out in the opinion are deemed sufficient to an understanding of the points decided. The jury found that the injury was caused by the negligence of the defendant. Judgment for plaintiff. Appeal by defendant.

*Messrs. Dillard & Gilmer*, for plaintiff.
*Mr. J. T. Morehead*, for defendant.

BYNUM, J. 1. The plaintiff was not in the first instance guilty of contributory negligence. The rule is that when the negligence of the defendant is proximate and that of the plaintiff remote, the action can be sustained, although the plaintiff is not entirely without fault ; but if the injury is the product of mutual or concurring negligence, no action for damages will lie. Apply these principles to this case.

The plaintiff's fence was three-fourths of a mile from the origin of the fire, but was connected with the fence first ignited by a continuous line of fence joined together by the intermediate land owners.

Chilcutt's fence which first caught fire was located on the defendant's right of way, and in close contiguity with the defendant's road bed. It was incumbent on Chilcutt to keep

the fence in repair, and his negligence in failing therein disabled him from recovering for his injuries, because he was contributory thereto. But Chilcutt's negligence does not affect the right of the plaintiff to maintain this action, although he negligently and voluntarily connected his fence with that of Chilcutt who was in default. The reason is that the plaintiff's negligence was remote, while Chilcutt's was proximate. The plaintiff's fence was distant and only connected with Chilcutt's by the intermediate fences of two other persons, and we know of no rule of law which required that the plaintiff should follow up and examine all the fences which he joined, and before he joined them to see if any of the proprietors by any contributive negligence had disabled themselves from recovering damages for injuries sustained by the negligence of the defendant.

If the plaintiff's negligence contributed directly to the injury, it is well settled that he cannot recover, but it is equally well settled that when he is only remotely and unconsciously negligent he is entitled to redress for all injuries inflicted by another, when by the latter the injuries could have been avoided by reasonable diligence. Whart. on Neg. ch. 9 ; *Stule* v. *Burkhardt,* 104 Mass. 59 ; *Hubbard* v. *Thompson,* 109 Mass ; *Kellog* v. *Chicago & N. W. R. W. Co* 26 Wis. 224.

2. The damage, was it proximate or remote? To render the defendant liable, the injury must be the natural and probable consequence of the negligence,—such a consequence as under the surrounding circumstances of the case, might or ought to have been foreseen by the wrong-doer as likely to result from his act. But where a fire is negligently kindled and by reason of some other intervening cause it is carried or driven to objects which it would not otherwise have reached, the destruction of such objects is a remote consequence of the negligence.

"A man's responsibility for his negligence," it has been well said, "must end somewhere. There is a

possibility of carrying an admittedly correct principle too far. It may be extended so as to reach the *reductio ad absurdum* so far as it applies to the practical business of life." *Hoag* v. *Lake Shore & Mich. South R. R. Co.* Penn. St. Rep. (Nov. 9th, 1877); 80 Penn. 182; *Penn. R. R. Co.* v. *Hope*, 80 Penn. 373.

Now what was the probable consequence of the fire here such as the defendant would have a right to expect? There were four fences owned by four separate proprietors, and the fourth proprietor is he who brings this action, and whose fence was distant three-fourths of a mile from the point of negligence. Instead of these fences being disconnected each surrounding the land of its own proprietor as the defendant had a right to expect, they were linked together in a continuous chain up to the source of danger, forming as it were a fuse leading from the fire to the magazine, the plaintiff's fence. The fire first ignited Chilcutt's fence, and was thence communicated to the next, and the next, and finally the plaintiff's. The defendant had the right to expect the destruction of Chilcutt's fence, because that was the natural and probable result of the fire; but the defendant had no right to expect the destruction of the other fences, nor is there any evidence that they would have been destroyed had each been disconnected and surrounding the premises of its owner. The fire only followed the continuous line of fence. The defendant could no more anticipate that the fire would reach the premises of the plaintiff, than the latter could anticipate that his voluntary act in joining his fence to Chilcutt's would be the means of drawing the fire upon himself. But the decision is not put upon that ground, but another.

The fire caught between ten and eleven o'clock a. m. At three p. m. it had not reached the fence of the plaintiff, but on the contrary, the evidence is that the persons who had been contending with the fire along the line of fence supposed they had extinguished it before it reached the

plaintiff's property, and had retired from the scene of action.

How long it was after 3 o'clock p. m. that the smouldering fire broke out afresh and was carried to the plaintiff's fence is not stated, nor how it reached there except the conjectural cause that it was carried by the force of the wind. It is at this point that the intervening cause comes in and establishes the dividing line between proximate cause which renders the defendant liable, and remote cause which does not.

The fire had been checked and was supposed to have been extinguished by those who had been contending with it, and they had retired from the ground.

Here was a cessation of the cause, a rest, an interval of what duration is not stated./ What occurred afterwards resulting in the plaintiff's injuries was remote damage which could not be reasonably foreseen or anticipated by the defendant as a necessary or probable result of the first negligence. And in point of fact those who were upon the ground, and the witnesses and the actors at the point of conflagration, and whose judgment is entitled to most weight, did not anticipate a further spread of the fire. These persons were the neighbors and probably the owners of the fences on fire, and as such were most deeply interested in securing themselves against present and future danger.

If they did not contemplate a renewed outbreak of the fire, upon no reasonable hypothesis can it be assumed that the defendant contemplated it as a necessary or probable result of the first cause. The facts do not constitute such a continuous succession of events so linked together as to become a natural whole, which would make it a case of proximate damages; but the chain of events, by the temporary cessation and extinguishment of the fire, was so broken that it became independent; and the final result cannot be said to be the natural and probable consequence of the primary

cause, the negligence of the defendant. The maxim here applies, *causa proxima non remota spectatur.* *Penn. R. R. Co.* v. *Hope,* 80 Penn. 373; 12 Mo. 366; *Webb* v. *R. & W. & O. R. R. Co.,* 49 N. Y. 421; *Perdy* v. *Eastern R. R. Co.,* 98. Mass. 415.

The second burning did not necessarily follow the first, because of the intervening arrest of the progress of the fire. But even supposing that the progress of the flames had been continuous, if there was any intervening negligence in the effort to extinguish the fire either by the intermediate owners of fences or by the neighbors who assembled for that purpose when their endeavors properly exerted might have been successful, the entire weight of authority is that the plaintiff cannot recover. Whart. on Neg. § 148 to 155, and the authorities cited.

The law looks to proximate and not the secondary or remote cause. The fire lasted from between 10 and 11 a. m. and 3 p. m. in the month of April, a time of year when all persons engaged in agriculture are out and employed upon their farms. This was a thickly settled neighborhood, as it would appear from the number of fence owners in the space of three-fourths of a mile. Such a fire of such a duration and extent could not escape the attention of the community, and in fact did not, as a sufficient number assembled to extinguish the fire, and did, as they supposed. How long was it from 3 p. m. when the fire was subdued, to the time when it rekindled? Whether one hour or five does not appear. What was the distance from the point of its suppression to the fence of the plaintiff where it was set on fire? Did the wind increase in violence and blow the flames or sparks over the intervening space, or was the fence reached by the continuous burning of the antecedent fences? Where was the family or servants of the plaintiff (he himself was sick). that a fire should rage in such proximity for four or five hours without their efforts to extinguish it?

The danger was imminent, and the law imposes the burden upon the plaintiff of showing that he was not negligent. If either his family, servants, or the owners of the preceding fences stood at their plow handles and beheld the destruction of their property when timely exertions would have saved it, the law will not suffer them to throw the loss resulting from their own apathy upon the defendant. His Honor did not present the case to the jury in this view, but instructed them that "notwithstanding some of the witnesses thought the fire had been extinguished at two points, yet if they believed that notwithstanding the efforts of the neighbors to stop it, it continued to burn and was carried by the winds to and consumed the plaintiff's fence, he was entitled to recover." This charge is hardly supported by the evidence. There is no evidence set out in the record that the neighbors were unable to arrest the progress of the fire, but the evidence is that they had extinguished it as they supposed, and that the fire continued to burn after they left the place.

While from the meagre and not very discriminating statement of facts before us, we cannot say as a matter of law that the plaintiff cannot recover, yet if upon another trial the plaintiff cannot present a better case, we should then be of opinion that he cannot recover.

Upon a second trial, attention should be directed to these questions: Was the burning of Troxler and Faucetts's fences, one or both, the necessary or probable consequence of setting fire to Chilcutt's? Was there such an extinguishment of the fire before it reached the plaintiff's fence as subjected it to the control of those who were endeavoring to suppress it? Did the fire revive and reach the plaintiff's fence in consequence of the negligence or want of reasonable precaution either on the part of the plaintiff, his family, or servants, or on the part of any of the antecedent fence owners, their servants, or families, or from what cause?

DOGGETT *v.* R. & D. R. R. Co.

These suggestions are not intended as the issues which should govern the trial, but only as an indication of the general scope of the next investigation.

The main object is to ascertain the facts.    When they are ascertained, the question of negligence is for the Court.    In respect to the several fence owners and their duty and responsibility in the presence of the fire, this rule has been laid down by high authority :—" A man in his senses in face of what has been aptly termed a ' seen danger,' that is, one which presently threatens and is known to him, is bound to realize it, and to use all proper care, and make all reasonable efforts to avoid it ; and if he does not, it is his own fault, and he having thus contributed to his own loss or injury, no damage can be recovered from the other party however negligent the latter may have been." *Kellog* v. *The Chicago & N. W. R. R. Co.,* 26 Wis. 223 ; Sherman & Redfield on Neg. § 34 N. 1.

Error.

PER CURIAM.                              *Venire de novo.*